UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES N. DIORIO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-cv-11327-ADB |
| VITALCORE HEALTH STRATEGIES, | * | |
| and JAMES HWANG, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Charles N. Diorio ("Plaintiff" or "Diorio"), proceeding pro se, brings this action

against VitalCore Health Strategies, LLC ("VitalCore") and James Hwang, D.D.S., M.D. ("Dr.

Hwang") (together, "Defendants") based on alleged conduct that occurred during and after a

dental appointment on March 5, 2025.  [ECF No. 20 ("Amended Complaint" or "Am.

Compl.") ¶¶ 1, 9–12].  Currently before the Court is Defendants' motion to dismiss.  [ECF No.

32 ("Motion to Dismiss" or "MTD")].  For the following reasons, the Defendants' motion is

**GRANTED**.

I.      **BACKGROUND**

        A.      **Factual Background**

For the purposes of this motion, the Court "accept[s] as true all well-pleaded facts alleged

in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor."

Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).  When evaluating a motion to dismiss, the Court may also consider "[m]aterials attached to a complaint, or incorporated by reference, [which] are a part of the pleading itself."  De Prins v. Michaeles, 236 F. Supp. 3d 482, 487 (D. Mass. 2017) (citing Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)).[1]

Plaintiff is currently incarcerated at Souza-Baranowski Correctional Center ("SBCC"), a state correctional facility in Shirley, Massachusetts.  [Am. Compl. at 1].  During the relevant period, he has received dental care from VitalCore, a contracted provider of health services for inmates, and Dr. Hwang, a VitalCore provider, at SBCC as well as at other Massachusetts prisons in which Plaintiff has been incarcerated.  [ECF No. 1-1 at 16–56]; [ECF No. 33 at 2].

From approximately October 2019 until March 2025, Plaintiff experienced an ongoing issue with one of his teeth.  See generally [Am. Compl. ¶¶ 1–13]; [ECF No. 1-1 at 16–56].  On October 28, 2019, Plaintiff had an emergency dental visit for a "persistent tooth ache" during which he received an x-ray of tooth #31.  [ECF No. 1-1 at 56].  In the visit notes, Dr. Hwang reported that Plaintiff's tooth was fractured and initially recommended that a crown would be "ideal."  [ECF No. 1-1 at 56]; [Am. Compl. ¶ 2].  Subsequently, Plaintiff submitted a sick slip stating that his "right lower molar need[ed] extraction or filling," and he received another evaluation from Dr. Hwang on November 4, 2019.  [ECF No. 1-1 at 53].  During the

---

[1] The Court notes that Plaintiff attached certain records related to his claims as an exhibit to his original complaint. See generally [ECF No. 1-1].  Although Plaintiff did not attach these records directly to his Amended Complaint, see generally [Am. Compl.], he included a similar set of records as an attachment to a separate document, [ECF No. 21], filed the same day as his Amended Complaint and labeled as "Exhibits."  Accordingly, the Court will consider both sets of documents in ruling on the Motion to Dismiss.

appointment, Dr. Hwang explained that they would need to do an exploratory evaluation of the tooth after removing the existing filling.  [Id.].  He discussed the risks and benefits of various treatment options with Plaintiff, who stated that he understood and wanted treatment "ASAP." [Id.].  Plaintiff alleges that Dr. Hwang recommended that it would be better for Plaintiff to retain the tooth in preparation for a crown procedure, rather than have it extracted, [Am. Compl. ¶ 3], and that Dr. Hwang removed a portion of his cracked tooth, either during the initial visit or sometime in 2019.  [Id. ¶ 4].

The dental progress notes from Plaintiff's June 30, 2020 visit with a different provider indicate that the tooth would be extracted at a future visit.  See [ECF No. 1-1 at 50].  Plaintiff's dental progress notes from September 28, 2020 state that he was unable to attend his scheduled dental appointment for "periodontal debridement PER SECURITY," and that his appointment would be rescheduled for October 5, 2020.  [Id. at 47].  Dental progress notes from October 27, 2020, state that Plaintiff "refused . . . [his] scheduled app[ointment]."  [Id. at 41].  Dental progress notes from May 7, 2021, also state that Plaintiff "refused (per CO) for S/S."  [Id. at 44]. Dental progress notes from November 3, 2021, indicate that Plaintiff was seen by Dr. Hwang, who advised Plaintiff that he should "put in [a] sick slip if he would like [to get his] tooth smoothed out."  [ECF No. 1-1 at 38].  On November 17, 2021, Plaintiff attended another appointment with Dr. Hwang, who advised Plaintiff that he could need additional treatment, including extraction.  [ECF No. 1-1 at 34].  The dental progress notes indicate that Plaintiff told Dr. Hwang that he wanted to keep the tooth for as long as possible but was aware of the risks and benefits and that extraction might be needed.  [Id.].

On October 2, 2023, Plaintiff saw another provider, Marylisa Allen, RDH ("Allen"), for an annual dental examination.  [ECF No. 1-1 at 31].  Allen indicated in the dental progress notes

that Plaintiff declined treatment for his tooth, but said he would "put a sick slip in when it bother[ed] him." [Id.].  Plaintiff put in a sick slip on July 23, 2024, stating that "something [was] stuck." [Id. at 21–27].  The dental progress notes from his examination on that day state that Dr. Hwang discussed treatment options with Plaintiff for his tooth and the "[a]lternative risk and benefits . . . regarding removing the tooth." [Id. at 27].  Plaintiff informed Dr. Hwang that he was not experiencing pain at that time, and Dr. Hwang documented that Plaintiff refused an extraction of his tooth. [Id.].  On December 30, 2024, Plaintiff refused to attend his annual dental appointment and was added to the recall list. [Id. at 16].

Plaintiff alleges that in February 2025, his tooth "became dislodged and lost its anchor resulting in the tooth moving and becoming displaced," [Am. Compl. ¶ 7], so he submitted sick call slips requesting dental care, [id. ¶ 8].  On March 5, 2025, Dr. Hwang conducted an exam and informed Plaintiff that he "ha[d] [a] loose tooth." [ECF No. 1-1 at 18–19].  Based on the dental progress notes, Dr. Hwang told Plaintiff they were "doing SS and no procedure" because the dental assistant was sick, but that he would be on the list for service. [Id. at 20].  The notes state that Plaintiff was "not happy and walked off," saying, "I will do it myself." [Id.].  Plaintiff asserts that (1) during the appointment, Dr. Hwang "was not prepared," and "did not have nursing assistance," [ECF No. 20-1 at 3], "although one [assistant] was present in the office attending [another] . . . inmate," [Am. Compl. ¶ 23]; (2) VitalCore and Dr. Hwang did not have the necessary tools, anesthesia, and other items required to perform the procedure that day, [id. ¶ 19]; and (3) Dr. Hwang was aware of the need to extract the tooth, ignored his obligation to do so, and "made a mockery of the painful condition," telling Plaintiff "[p]ull your own tooth." [Id. ¶¶ 9–10].  According to Plaintiff, Dr. Hwang then reportedly "ordered [him] from his medical office saying several times: 'Pull it.'" [Id. ¶ 11].  Plaintiff claims that Dr. Hwang

4

subsequently "ignored [his] . . . request[] [for] further information and clarification." [Id. ¶ 25].

After returning to his cell, Plaintiff alleges that he was "[d]ejected and in pain" and pulled the

tooth himself in "unsanitary and dangerous conditions," which caused bleeding and "a gaping

cavity in [his] gum." [Id. ¶¶ 12, 26].

### B.    Procedural History

On May 12, 2025, Plaintiff, proceeding pro se, filed his complaint against Defendants.

[ECF No. 1]. He then filed an Amended Complaint on December 5, 2025 in which he appears to

bring a negligence claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), a

medical malpractice claim, and a claim for a violation of his Eighth Amendment rights. [Am.

Compl.]. On January 9, 2026, Defendants filed a motion to dismiss for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 32]. Plaintiff opposed on January 30, 2026.

[ECF No. 34].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

Court must "accept as true all well-pleaded facts alleged in the complaint and draw all

reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc.,

732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir.

2011)). A complaint must set forth "a short and plain statement of the claim showing that the

pleader is entitled to relief." Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2)). While

detailed factual allegations are not required, the complaint must be facially plausible, meaning

that "the complaint must contain 'enough facts to state a claim to relief that is plausible on its

face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Consequently, "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

Determining whether a complaint is facially plausible "invites a two-step pavane." Maddox, 732 F.3d at 80 (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012)). First, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

Further, a pro se complaint must be "liberally construed" by a court and "'however inartfully pleaded,' [it] must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)). "However, pro se status does not insulate a party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (citing Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994)). Additionally, "[w]here the court cannot ascertain the nature and basis of any legitimate claims, it is under no obligation

6

to rewrite the pleadings on the plaintiff's behalf." Sanborn v. Bowers, 788 F. Supp. 3d 153, 158 (D. Mass. 2025) (citing D.S. v. Kijakazi, No. 22-cv-12001, 2024 WL 22858, at *1 (D. Mass. Jan. 2, 2024)).

### III.   DISCUSSION

Construed liberally, Plaintiff brings claims for negligence, medical malpractice under Massachusetts General Laws Chapter 231 § 60B, and violation of the Eighth Amendment.  [Am. Compl.]; [ECF No. 20-1].

Defendants seek to dismiss Plaintiff's Amended Complaint for two reasons.  First, they contend that Plaintiff has not adequately pleaded that Defendants violated his Eighth Amendment rights by denying or providing him with inadequate medical care.  [ECF No. 33 at 1].  Second, Defendants argue that VitalCore cannot be subject to respondeat superior liability pursuant to 42 U.S.C. § 1983 with respect to Plaintiff's alleged constitutional violation.  [Id.].

#### A.   The Federal Tort Claims Act

The Court will first address Plaintiff's FTCA claim.  [Am. Compl. at 1–2].  Defendants argue that Plaintiff's FTCA claim must be dismissed because neither VitalCore nor Dr. Hwang are federal actors, and, therefore, the FTCA is inapplicable.  [ECF No. 33 at 3 n.2].

The FTCA provides the exclusive remedy to compensate a plaintiff for tortious acts committed by a federal employee within his or her scope of employment, see 28 U.S.C. § 2679(b)(1).  It is "a limited waiver of the federal government's sovereign immunity," Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009), that allows plaintiffs to bring certain "private causes of action sounding in tort," id., against the federal government.  The United States is the only proper defendant in an action under the FTCA, see 28 U.S.C. §§ 1346(b), 2674, 2679; McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006), therefore,

state and municipal actors cannot be sued under the FTCA, Simmons v. Himmelreich, 578 U.S. 621, 623 (2016) ("The Federal Tort Claims Act (FTCA) allows plaintiff to seek damages from the United States for certain torts committed by federal employees.") (emphasis added); Baze v. 195th Court, No. 23-cv-00087, 2023 WL 2432913, at *1, n.1 (N.D. Tex. Feb. 13, 2023) (stating that because the plaintiff sued only state actors, the FTCA did not apply); Curbow v. Clintsman, No. 21-cv-01420, 2022 WL 2192911, *4 (W.D. Wash. June 15, 2022) ("[T]he FTCA does not apply to state actors."). The Defendants here are state contractors, rather than federal employees, so the FTCA is not applicable to them. See Penque v. Dep't of Pub. Safety, No. 20-cv-00338, 2020 WL 5351032, at *1 (D. Haw. Sep. 4, 2020) (holding that plaintiff could not bring FTCA claims against state prison officials for conduct that occurred while incarcerated in state prison); Marsh v. Stratton, No. 23-cv-00899, 2025 WL 950856, at *16 (M.D. Pa. Mar. 28, 2025) (explaining that Plaintiff, a state prisoner, could not bring an FTCA claim against Department of Corrections employees based on alleged conduct that occurred at a state correctional institution).

Plaintiff's argument that Defendants are subject to the FTCA because they receive federal funding is unavailing, [Am. Compl. at 5], as the FTCA is not intended or construed "to reach employees or agents of all federally funded programs that confer benefits on people," United States v. Orleans, 425 U.S. 807, 813, 816 (1976) (holding that employees of a local community action agency were not federal employees merely because they received federal funding); see also Logue v. United States, 412 U.S. 521, 526–33 (1973) (holding that the employees of a county jail that contracted with the Federal Bureau of Prisons to house federal prisoners were not federal employees, and therefore were not covered by the FTCA). Accordingly, Plaintiff's FTCA claim is hereby **DISMISSED** without prejudice as to any common law tort claims that Plaintiff may bring directly against Defendants.

### B.    Eighth Amendment Violation

Although not entirely clear, both Defendants and the Court interpret Plaintiff's Amended Complaint to suggest an Eighth Amendment claim based on inadequate or denied medical care. See [ECF No. 33 at 3]. The Eighth Amendment requires prison officials to "provide humane conditions of confinement[,] . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment. The Eighth Amendment is meant to prohibit 'unnecessary and wanton infliction of pain,' which is 'repugnant to the conscience of mankind.'" Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (quoting Estelle, 429 U.S. at 103, 105–06 (1976)). That said, the Eighth Amendment "does not mandate comfortable prisons," but rather prohibits "inhumane ones." Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (first quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981); and then quoting Farmer, 511 U.S. at 832); see also Hudson v. McMillian, 503 U.S. 1, 8–9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' . . . 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" (internal citation omitted) (first quoting Rhodes, 452 U.S. at 347; and then quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991))).

An Eighth Amendment claim for inadequate medical care has both objective and subjective components, both of which must be satisfied. See Kosilek, 774 F.3d at 82.

1.      The Objective Component

To satisfy the objective component, a plaintiff must plead facts, which, if true, show "a serious medical need for which [the plaintiff] has received inadequate treatment." Kosilek, 774 F.3d at 85.  For purposes of the Eighth Amendment, a medical need is "serious" if it has "been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 82 (quoting Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).  The objective prong does not "impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing," id., and the care provided should be "measured against 'prudent professional standards,'" Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1st Cir. 2014) (quoting United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987)).

Plaintiff alleges that from 2019 until March 2025, his tooth was "cracked," and Defendants told him that the tooth could be "saved" and a crown applied or it could be extracted. [Am. Compl. ¶ 2].  In 2019 during his first visit with Dr. Hwang in connection with the tooth, Dr. Hwang removed a portion of the cracked tooth.  [Id. ¶ 4].  The dental records Plaintiff submitted indicate that Plaintiff was seen by Dr. Hwang and other dental providers multiple times between 2019 and 2025, and that he consistently objected to the tooth being extracted. See generally [ECF No. 1-1]; [ECF No. 21-1].  Over time the tooth became more painful, and by February 2025, it "became dislodged and lost its anchor," which resulted in the tooth "moving and becoming displaced." [Am. Compl. ¶¶ 5, 7].  Plaintiff immediately submitted sick call slips requesting dental care.  [Id. ¶ 8].  He was seen by Dr. Hwang on March 5, 2025, who informed Plaintiff that he could not extract the tooth that day because his assistant was not there and he did not have the necessary supplies, including anesthesia.  [ECF No. 1-1 at 20].  He said that he

would schedule Plaintiff a future appointment for the extraction.  [ECF No. 20-1 at 3, 5].

Plaintiff alleges that Dr. Hwang then told Plaintiff to "pull [his] own tooth" and "pull it," as

Plaintiff was leaving the visit, [Am. Compl. ¶¶ 10–11], after which Plaintiff returned to his cell

and pulled out his tooth, [id. ¶ 12].

Defendants respond that even if Plaintiff's fractured tooth is considered a serious medical

need, Plaintiff has failed to plead that the dental treatment he received was inadequate.  [ECF

No. 33 at 5].  In support of this argument, they point to the lengthy set of dental progress notes

that Plaintiff filed, arguing that Plaintiff was seen by SBCC dental providers multiple times per

year and provided treatment as well as opportunities to have his tooth extracted.  [Id. at 6].

Specifically, in November 2021, Dr. Hwang performed a filling on the tooth and was told by

Plaintiff that he wished to keep the tooth for as long as possible; in October 2023, Plaintiff

declined treatment for the tooth; and in July 2024, Plaintiff again refused an extraction.  [Id.

(citing [ECF No. 1-1 at 27, 31, 34])].  Defendants contend that Dr. Hwang acted responsibly by

not extracting the tooth on March 5, 2025, when he was without his dental assistant, and instead

adding Plaintiff to the list for an extraction.  [Id.].

Though it was perhaps less than ideal that Plaintiff could not have his tooth extracted on

March 5 as he wished, his dental issue had been adequately treated for multiple years, and as

Plaintiff himself acknowledges, there was no extraction on that day because Dr. Hwang did not

have the proper tools or support and instead offered to treat Plaintiff at a future date.  That being

said, Plaintiff has pled that Dr. Hwang was unprepared for the appointment and suggested that

Plaintiff pull out his own tooth, and whether the care that Defendants provided measured up to

the prudent professional standard remains a question of fact.  As such, at this stage of the

11

litigation, Plaintiff has sufficiently, if thinly, pled that he had a serious medical need and the care

he received was inadequate or less than what a prudent professional would have provided.[2]

### 2.    The Subjective Component

To satisfy the subjective component, a plaintiff must allege facts supporting an inference

of "deliberate indifference" by the defendant. Kosilek, 774 F.3d at 83 (citing Estelle, 429 U.S. at

105–06). Deliberate indifference refers to "a narrow band of conduct." Id. (quoting Feeney v.

Corr. Med. Servs. Inc., 464 F.3d 158, 162 (1st Cir. 2006)). Demonstrating deliberate

indifference requires allegations that support the conclusion "that the absence or inadequacy of

treatment is intentional" rather than simply inadvertent. Perry v. Roy, 782 F.3d 73, 79 (1st Cir.

2015). "The obvious case [of deliberate indifference] would be a denial of needed medical

treatment in order to punish the inmate." Kosilek, 774 F.3d at 83 (quoting Watson v. Caton, 984

F.2d 537, 540 (1st Cir. 1993)). "But deliberate indifference may also reside in 'wanton'

decisions to deny or delay care where the action is recklessness, 'not in the tort law sense but in

the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm,

easily preventable.'" Watson, 984 F.2d at 540 (internal citation omitted) (first quoting Wilson,

501 U.S. at 302; and then quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)); Leavitt

v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) ("the treatment provided must have

been so inadequate as 'to constitute an unnecessary and wanton infliction of pain or to be

repugnant to the conscience of mankind'") (quoting Estelle, 429 U.S. at 105–06).

---

[2] For purposes of a motion to dismiss, the Court must accept Plaintiff's allegation concerning the directive to pull his own tooth as true, but the veracity of this statement would need to be proven were this case to continue.

Plaintiff has failed to satisfy the subjective prong. Defendants argue first that Plaintiff has not alleged that his tooth becoming "dislodged" put him at an unusually serious risk of harm such that his tooth needed to be removed no later than March 5. [ECF No. 33 at 8]. They also argue that even if Plaintiff was subject to such a risk, he has failed to allege that Dr. Hwang was aware of that risk or even aware, prior to the March 5 appointment, that Plaintiff would insist on extraction that day. [Id.]. Lastly, Defendants argue that Plaintiff does not allege that Dr. Hwang failed to take obvious steps to address the risks posed by Plaintiff's tooth. [Id.]. Dr. Hwang explained why he could not perform the procedure at that appointment and placed Plaintiff on the list for extraction. [Id. at 9]. Defendants also note that even if Dr. Hwang had made a comment to Plaintiff about pulling his own tooth, the comment would not have caused Plaintiff's harm because it would not have changed the fact that Dr. Hwang could not perform the procedure that day, and that Plaintiff independently chose to remove his own tooth when he returned to his cell. [Id. at 9 n.7].

The Court finds that Plaintiff has failed to allege that Dr. Hwang's actions were wanton, reckless, or done with the purpose of punishing Plaintiff. Plaintiff does not allege, for example, that Dr. Hwang was aware that he would demand that the tooth be extracted at the March 5 appointment and was intentionally unprepared to perform the procedure. Dr. Hwang reasonably put Plaintiff on the list for further treatment, and there is no indication, based on Plaintiff's allegations and exhibits, that he would not receive additional dental treatment within a reasonable amount of time. Further, the Court finds that Dr. Hwang's alleged statement to Plaintiff, though perhaps not measuring up to prudent professional standards, as discussed above, does not fall within the "narrow band of conduct" that constitutes deliberate indifference for the purposes of an Eighth Amendment violation, and Plaintiff does not allege that the statement was

13

made with malice or a reckless disregard for his wellbeing.[3]  As such, Plaintiff has failed to meet the requirements of the subjective component for his Eighth Amendment claim.

### 3.        Respondeat Superior

Further, for the avoidance of doubt, VitalCore cannot be held liable under section 1983 on the tort theory of respondeat superior.  Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016) ("[A] supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority.").  A claim for supervisory liability under section 1983 "has two elements: first, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights, . . . [and s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference."  Id. at 514–15 (quotations and alterations omitted).  As discussed above, Dr. Hwang, the VitalCore provider, did not abridge Plaintiff's constitutional rights.  VitalCore cannot, therefore, be held liable under section 1983.[4]

Accordingly, Plaintiff's Eighth Amendment claim is hereby **DISMISSED**.

---

[3]Throughout the Amended Complaint, Plaintiff repeatedly alleges that Dr. Hwang was negligent, see [ECF No. 20-1 at 5, 7], however, "subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim," under the Eighth Amendment, Leavitt, 645 F.3d at 497.

[4]As a result, the Court will not proceed to analyze the second prong of the supervisory liability test other than to note that it seems unlikely that Plaintiff can satisfy this prong.

### C.      Remaining State-Law Claims

Plaintiff's remaining claim alleges medical malpractice against Dr. Hwang and

VitalCore.  [Am. Compl. at 4].  Federal jurisdiction in this action rests on Plaintiff's FTCA and

section 1983 claims, see 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States."), both of

which will be dismissed for the reasons explained above.[5]  Because there are no remaining

federal claims, the Court must decide whether to exercise supplemental jurisdiction over the

asserted state law claims.  A court may decline to exercise supplemental jurisdiction over a

plaintiff's state law claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the
> district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original
> jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining
> jurisdiction.

28 U.S.C. § 1367(c)(1)–(4); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726

(1966) ("Needless decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties . . . . Certainly, if the federal claims are dismissed before trial

. . . the state claims should be dismissed as well."); Camelio v. Am. Fed'n, 137 F.3d 666, 672

(1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of

---

[5] Plaintiff does not claim that this Court may exercise diversity jurisdiction in this matter, and based on the Court's review of the pleadings, there does not appear to be complete diversity between the parties.  See BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023) ("Under the federal statute, as relevant here, no diversity must be complete; that is, no plaintiff may be a citizen of the same state as any defendant." (first citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); and then citing Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992))).

declining jurisdiction over state law claims where the foundational federal claims have been

dismissed at an early stage in the litigation.").  Because Plaintiff's medical malpractice claim

involves issues of state law and because this litigation is still in the very early stages, the Court

declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

Accordingly, Plaintiff's medical malpractice claim, along with any other common law

tort claims which he may be alleging in his Amended Complaint, are hereby **<u>DISMISSED</u>**

without prejudice as to whatever rights Plaintiff may have to pursue this claim in state court.[6]

---

[6] As Plaintiff acknowledges in his pleadings, "Massachusetts law provides a screening mechanism for medical malpractice claims" requiring that such claims be heard before a tribunal before being pursued in court.  Wittkowski v. Spencer, 249 F. Supp. 3d 582, 584 (D. Mass. 2017); see Mass. Gen. Laws ch. 231, § 60B ("Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result.").

Plaintiff asserts both that he submitted his medical malpractice claim to the Massachusetts medical malpractice tribunal in accordance with Mass. Gen. Laws ch. 231, § 60B, [ECF No. 20-1 at 4, 11], and also that this Court is required to refer his claim to the tribunal, [id. at 11]. Because Plaintiff's federal law claims will be dismissed, and the Court is declining to exercise jurisdiction over his state law claim, the Court will not refer his medical malpractice claim to the tribunal.  Hickey v. MetroWest Med. Ctr., 193 F. App'x 4, 6 (1st Cir. 2006) (holding that the district court erred in referring claim to the state court for the convening of a medical malpractice tribunal, because "[o]nce the district court concluded that all that [plaintiff] raised were essentially state law medical malpractice claims against these defendants (and no other basis for federal jurisdiction was apparent), it should have dismissed the complaint against them for lack of jurisdiction" (citing Pallazola v. Rucker, 797 F.2d 1116, 1127–28 (1st Cir. 1986))).

16

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's

Amended Complaint, [Am. Compl.], is **DISMISSED**.

    **SO ORDERED.**

May 27, 2026                                                    */s/ Allison D. Burroughs*
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE